UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| HAROLD WAYNE  NICHOLS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 1:10-cv-148 |
| | ) | *Mattice/Carter* |
| RICKY BELL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Harold Wayne Nichols ("Nichols" or "Petitioner"), an inmate confined in the Riverbend Maximum Security Institution, brings this petition for a writ of habeas corpus, 28 U.S.C.§ 2254, challenging the legality of his confinement under a 1990 Hamilton County, Tennessee judgment convicting him of aggravated rape and first degree burglary, entered pursuant to his guilty pleas, [Doc. 1].  For these offenses, Nichols is serving a total sentence of twenty-five years, though he received a death sentence for the murder of another rape victim and 225-years imprisonment for six other non-capital aggravated rape convictions. Warden Ricky Bell has filed an answer to the petition, which is supported by copies of the state court record, [Docs.  5, 11, 13, and 18, Addenda 1-8].  Petitioner has replied to the Warden's answer, [Doc. 23], and thus the case is ripe for disposition.

The § 2254 petition raises, as grounds for relief, claims of ineffective assistance and a violation of Nichols's rights to a speedy trial and to petition the courts for redress.

The Warden argues, in his response, that Nichols is not entitled to relief from the state court decisions rejecting his claims on the merits, given the deferential standards of

review set forth in 28 U.S.C. § 2254. Alternatively, the Warden suggests that petitioner has insufficiently pled his claim that counsel gave him ineffective assistance by failing to investigate other viable suspects. The Court agrees with respondent Warden that relief is unwarranted and, for the reasons which follow, will **DENY** the petition and **DISMISS** this case.

## I. <u>Procedural History</u>

Nichols's convictions were affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA"), *State v. Nichols*, No. 03C01-9108-CR-00236, 1995 WL 755957 (Tenn. Crim. App. Dec. 19, 1995), and his subsequent state post-conviction petition was denied with respect to his convictions, but granted on his sentencing claims. Nichols appealed the post-conviction court's decision affirming his convictions, but did not obtain relief in the TCCA, *Nichols v. State*, No. E2008-0562-CCA-R3-PD, 2001 WL 55747 (Tenn. Crim. App. Jan. 19, 2001), or in the Tennessee Supreme Court. *Nichols v. State*, 90 S.W.3d 576 (Tenn. 2002). Nichols, who was resentenced on December 17, 2007, was afforded no relief on direct review of his resentencing in either state appellate court. *Nichols v. State*, E2008-00169-CCR-R3-CD, 2009 WL 2633099 (Tenn. Crim. App. Aug. 27, 2009), *perm. app. den*. (Tenn. 2010). On June 1, 2010, petitioner timely filed this instant habeas corpus application.

## II. <u>Background</u>

Proof was presented that, until Nichols's arrest in January, 1989, he roamed Chattanooga, Tennessee, at night, searching for vulnerable female victims to rape, when a "strange energized feeling" arose within him. *State v. Nichols*, 877 S.W.3d 722, 726

(Tenn. 1994).  One of those women was T.R.,[1] who had returned from the movies at 11:15

P.M. on December 27, 1988, and was carrying items from her vehicle into her Red Bank

suburban apartment, [Addendum 3, vol. 29, Guilty Plea Hr'g Tr., September 13,1989].  As

she was facing the front door, someone standing behind her (whom she later identified as

petitioner) looped around her neck what she thought was a rope, but which was, in fact,

an electrical cord, which he had ripped from her iron.  Petitioner then forced her into the

bedroom, where he threatened to kill her unless she did as she was told.  He ordered  her

to strip, but when she delayed, he ripped off her clothes and repeatedly struck her in the

head and mouth, after she informed him that she was menstruating.  He threw her on the

bed, removed a tampon from her, and had oral and vaginal intercourse with her by force.

After telling her not to move, he departed the premises.  She called 911 about ten minutes

later.

An investigation led police to Nichols and, late in the evening of January 5, 1989,

he was taken into custody.  On January 6, 1989, beginning at 12:47 a.m., Nichols gave a

short statement to East Ridge police officers in which he admitted to the rape of T.R.  Later

that same day, petitioner gave another confession to the rape, which was videotaped.

Thereafter, Nichols entered pleas of guilty to aggravated rape and first degree burglary.

### III.  Standard of Review

Under the review standards set forth in the Antiterrorism and Effective Death

Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, *et seq*.,  a court considering a habeas

claim must defer to any decision by a state court concerning the claim unless the state

---

[1]     As did the state court, this Court will refer to the victim by her initials.

court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) ( noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. Discussion

Each of petitioner's claims will be reviewed separately.

4

## A.  *Ineffective Assistance of Counsel, [Pet., Ground One].*

In his first claim, petitioner maintains that, in several instances, the attorneys who were appointed to represent him gave him ineffective assistance.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687.  Petitioner has the burden of showing both deficient performance and prejudice, *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)—the latter burden being quite a heavy one, *Williams*, 529 U.S. at 394.  In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable

5

professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to establish "prejudice" within the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's professional errors, he would not have pled guilty but would have insisted on standing trial.[2] *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that, but for counsel's error, he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995).

Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Hill*, 474 U.S. at 59. Indeed, counsel is constitutionally ineffective only if a performance which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

---

[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695.

While both prongs must be established in order to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697. Review of a *Strickland* claim under § 2254(d)(1) is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420 (2009), and a federal habeas court, reviewing such a claim must beware lest it equate "unreasonableness under S*trickland* with unreasonableness under § 2254(d)." *Harrington*, 131 S. Ct. at 788. The question presented under § 2254(d), "is not whether counsel's actions were reasonable. . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Here, Nichols alleges that he received ineffective assistance from his attorneys, Lead Counsel Hugh J. Moore, Jr., and Co-Counsel Rosemarie L. Bryan. More specifically, petitioner asserts that his lawyers (1) failed to investigate the reliability of his statements taken under coercive and suggestive conditions; (2) failed to investigate other viable suspects implicated in police records and failed to inform Nichols of the suspects; (3) failed to investigate and provide necessary information to the State's forensic expert, which would have enabled the expert to exclude Nichols as a suspect; 4) had Nichols plead guilty before he was seen by the court-authorized defense psychologist; and (5) failed to move to suppress Nichols's statements taken after he was illegally arrested, based solely on anonymous tip, and coerced to confess. Finally, as sub-claims (6) and (7), Nichols maintains that, but for counsel's ineffectiveness, he would not have pled guilty and that his rape conviction was used to support the aggravating factor in his death penalty case. These last two sub-claims are intended, not as examples of deficiencies of performance,

but as claims of prejudice, or even "extreme prejudice," resulting from such a sub-par performance, [Doc. 23, Petr.'s Reply at 3].

### 1. Reliability of Nichol's Statements, [Doc. 23, Petr.'s Reply at 2-3, 5-11].

At the outset, the Court notes that the assertions of fact which support the claims of ineffective assistance presented in the petition are contained in Nichols's reply. A reply to a respondent's answer to a habeas corpus application is not the proper pleading in which to present arguments in support of a claim. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in [petitioner's] traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."). Furthermore, the section of petitioner's reply discussing the ineffective assistance claims is disorganized and the claims and arguments are intermingled and undifferentiated. The Court has spent a great deal of time unscrambling the arguments and matching them to the claims to which they pertain and, thus, will exercise its discretion to consider this pleading.

In his reply, petitioner maintains that counsel failed to conduct a reasonable investigation into the circumstances of his confession, so as to explore the possibility that the confessions were coerced or false; to debrief Nichols to determine whether there was evidence of coercion during his interrogation; and to investigate facts supporting a reasonable doubt defense. Petitioner further alleges that, though he was arrested as he was preparing to eat dinner, he was not allowed food until later the following morning; that at least six officers were present in the small interrogation room; that his request to call his wife was denied; that he was promised "help" and "treatment" if he cooperated by giving

a statement; that, according to an expert's deposition testimony, there were significant examples of coercion which could have supported a suppression motion, but that no such motion was filed; and that the circumstances surrounding the confession were likely to and did overbear Nichols's will to resist.   Petitioner also asserts that the interrogation tactics employed with Scott Simcox, a person of interest in Nichols's cases, could have proved the coerciveness of the interrogation process used in the T.R case.

When this claim was raised in the Tennessee Supreme Court, it found that

> trial counsel's investigation and defense were reasonably shaped by Nichols' confessions and statements to the non-capital offenses. Nichols confessed to the offenses involving . . . T. R. . . .
>
> Although the petitioner now argues that his trial counsel . . . failed to challenge his confessions as false because they were given in a short period of time in response to leading questions asked by police officers, we once again observe that he never refuted his confessions or his statements to his trial counsel and never provided a basis for a false confession defense. In addition, the record reveals that substantial evidence corroborated trial counsel's testimony. In entering guilty pleas for the offenses against T.R., the petitioner conceded the evidence of his guilt and knowingly and voluntarily waived his right to a jury trial. ....
>
> In sum, the evidence at the post-conviction hearings did not establish the deficient performance of counsel given the petitioner's confessions and consistent statements of guilt. We conclude that trial counsel's representation did not fall below an objective standard of reasonableness . . . in failing to challenge the confessions as false.
>
> In addition, we agree with the Court of Criminal Appeals' conclusion that Nichols failed to show any prejudice under the second prong of the analysis. As we have discussed, the record reveals that Nichols confessed to the offenses against T. R. . . . and that he knowingly and voluntarily entered pleas

of guilty to the offenses. In light of his confessions and consistent statements of guilt, as well as trial counsel's testimony that the petitioner was fully aware of the defense strategy and all of his options, it would be speculation to find from any of the evidence introduced at post-conviction that he would have proceeded to trial instead of pleading guilty.

*Nichols v. State*, 90 S.W.3d at 595-96.

Concluding, after a review of the record and applicable authority, that Nichols "was not denied his right to the effective assistance of counsel based on the failure to investigate and challenge his confessions as false," the state supreme court rejected this instance of ineffective assistance.

Petitioner argues, first, that the state court decision rests on unreasonable factual determinations and, thus, that § 2254(d)(2) supports the granting of habeas corpus relief. There are four separate factual findings to which Nichols points as being unreasonably determined, [Doc. 23, Petr.'s Reply at 9-11].

The first fact to challenged as being unreasonably determined is "that the petitioner never refuted his confessions or his own statements to his trial counsel and others." This finding is contradicted, in Nichols's view, by Dr. Ofshe's explanation "that a person who has falsely confessed 'has actually been persuaded that they probably committed a crime about which they know they have no knowledge,'" [*Id.* at 9-10].

However, Dr. Ofshe's comment relies on the presumption that a person has falsely confessed. But any such a presumption, as it relates specifically to petitioner, is unsupported in the record. Furthermore, Dr. Ofshe's explanation, on its face, says absolutely nothing about whether Nichols repudiated his confession to police officers, his

10

attorneys, or others. The record is devoid of evidence showing that Nichols actually renounced his confessions. To suggest otherwise is groundless.

Next, Nichols takes exception with the state court's finding that "petitioner has not attempted to explain how, in view of his continuing to assert that the confessions were true, trial counsel could have effectively presented a 'false confession' defense." [*Id.* at 10, citing *Nichols*, 90 S.W.3d at 594]. Nichols claims that he did not continue to assert that his confessions were true. Yet, even during his testimony in the trial of the capital case, he stuck by his prior admissions of guilt.[3]

Nor has he shown that he could have presented an *effective* defense, (i.e., one that would have produced "a decided, decisive or desired effect,"(Free Merriam-Webster Dictionary, *see* online at http://www.merriam-webster.com /dictionary/effective) (Internet materials as visited August 20, 2013, and available in Clerk of Court's case file)). True, petitioner theorizes that, by offering the testimony of a false-confession expert, he could have shown that his confession was suspect, but he has offered no concrete facts to support that the presentation of such testimony, in the face of Nichols's adherence to his admissions of guilt, would have been tenable. *See, e.g., Bruton v. United States*, 391 U.S. 123, 140 (1968) (Because of its "profound impact on the jury," that it is doubtful that a jury can ignore a confession even if told to do so) (White, J., dissenting); *United States v. Fleming*, 594 F.2d 598, 603-604 (7th Cir. 1979) ("Where the statement is not repudiated,

---

[3] Nichols testified in the murder trial and, apparently referring to his confessions regarding other rape victims, said that "getting all this, the other things off my mind–or off my chest was like a relief." *Nichols*, 2001 WL 55747, at * 8.

it may be powerful evidence of guilt. . . .").  Finally, co-counsel testified that she had looked into the circumstances surrounding the confession, but decided that claiming that the confessions were false would have been ludicrous, unless counsel wanted 'to manufacture a defense." *Nichols* 90 S.W.3d at 592-93.

Accordingly, there is nothing in the record which contravenes the second questioned factual finding involving an effective presentation of a false confession defense.

Nor does the record disclose any proof contravening factual finding number three (that Dr. Ofshe had not met Nichols) or factual finding number four (that no showing had been made concerning Nichols's susceptibility to suggestions and pressure, such that he might have been led into giving false confessions).  While petitioner points to testimony concerning his impaired memory, significant memory loss, and disassociative experiences, he has not connected any of these impairments to his susceptibility to making a false confession.  In short, nothing Nichols has offered supports the assertion that the state court's resolution of this claim was based on unreasonable determinations of the four cited facts.

Petitioner's next argument is that the state court unreasonably applied *Strickland* by applying one sentence in *Strickland* to decide this instance of ineffective assistance. The state court's questioned statement referring to *Strickland* is that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  According to petitioner, the state court used this tenet from *Strickland* to " insulate counsel from their absolute duty to independently investigate the

circumstances of the confession," [Doc. 23, Petr.'s Reply at 11]. Nichols's allegation completely mischaracterizes the state court's decision. The state court reasoned that

> "[t]he evidence showed that counsel and their investigator put thousands of hours into the investigation of the offenses and considered numerous issues and the viability of several possible defenses. They had numerous meetings and conversations with the petitioner, who was aware of and understood the evidence of his guilt and the strategy used in his defense. While the lens of hindsight indicates that trial counsel could have developed some of the issues more fully, . . . Nichols still confessed and the issues were fully litigated by the post-conviction trial court. In sum, as the trial court found, nothing at post-conviction established that trial counsel's representation fell below an objective standard of reasonableness . . . in failing to challenge the confessions as false when viewed in the context of the petitioner's own confessions and statements of guilt.

*Nichols*, 90 S.W.3d at 595.[4] As shown by the above cited section, the state court did not just focus on the confessions, but considered all the circumstances underlying this claimed instance of ineffectiveness, including the meetings and conversations counsel had with his client, the numerous hours counsel had devoted to the investigation of the offenses, and the issues and viability of defenses which counsel had explored. Neither the state court's decision nor its reasoning is discordant with the guidelines set forth in *Strickland* and, thus, the state court did not unreasonably apply *Strickland* in finding that "trial counsel's investigation and defense were reasonably shaped by Nichols' confessions and statements to the non-capital offenses." Petitioner's suggestion to the contrary is rejected.

---

[4] Though the quoted rationale was offered in connection with claims asserted in Nichols's capital case, the state court explained that the same rational applied equally to his confessions in T.R.'s case. *Nichols*, 90 S.W.3d at 595.

Consequently, under the very onerous standard Nichols must meet to prevail on his ineffective assistance claim, it was not objectively unreasonable, under *Strickland*, for the state court to determine that counsel's alleged failure to investigate the reliability of Nichols's confession to the offenses against T.R. did not constitute a deficiency of performance and that there was no prejudice. *See Strickland*, 466 U.S. at 690, 694 (prejudice established by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different"); *Harrington*, 131 S.Ct. at 786 (2011) (Section 2254(d) serves to protect "against extreme malfunctions of the state criminal justice system.") (citation omitted); *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) (noting that habeas corpus review encompasses both the *Strickland* and § 2244(d) standards, the latter of which "sets forth a heavy burden for a petitioner to overcome").

*2. Failure to Investigate Other Suspects, [Doc. 23, Petr.'s Reply at 2-3, 15-18].*

The second asserted instance of ineffective assistance is that counsel failed to investigate and inform Nichols that police records implicated other legitimate suspects. In his reply, Nichols fleshes out his claim by asserting that there were three viable suspects whom counsel failed to investigate—the prime suspect, Fred Coats, along with suspects Phillip Redwine and Jim Snow. According to Nichols, Coats was identified by two other victims and a police dog tracked a scent from one victim's house in the direction of a parking lot where Coats's mother's vehicle was parked. Phillip Redwine, it is claimed, had shaved off all his body hair when the police attempted to secure hair samples, and Jim Snow was convicted of the attempted rape of the sister one of the victims.

14

Petitioner maintains that counsel minimized the importance of the other suspects and, crediting a police officer's explanation that there was nothing to the suspicious actions of one suspect, did not evaluate themselves the evidence for any potential exculpatory value and did not use the evidence "to sew the seeds of reasonable doubt concerning [their] client's guilt," [Doc. 23, Petr.'s Reply at 16-17].

In his response, the Warden first argues that the claim is insufficiently pled, given petitioner's failure "to specify which 'other viable suspects' counsel failed to discover in police records and inform Nichols of," [Doc. 5, Resp.'s Answer at 49]. However, this argument was made before petitioner filed his reply, which more fully fleshed out his claim, and, as a consequence, corrected the inadequacies in his claim. The Warden maintains, alternatively, that the state court's adjudication of the claim must be given AEDPA deference under § 2254(d).

This claim was raised in the TCCA and in the state supreme court during the post-conviction appeals. In the TCCA, Nichols argued that his attorneys "could have established reasonable doubt through some of the other persons investigated for the rapes." *Nichols*, 2001 WL 55747, at * 31. The state court rejected this claim, finding that the record revealed that the attorneys had "dealt with this issue in their representation of the petitioner." For example, during a hearing in early 1990, lead trial counsel questioned a police officer concerning identifications by two or more victims of a Mr. Coats. Also, at the trial involving another rape victim (P.R.), the victim testified about her misidentification of Coats, explaining that, when she saw Coats's photograph, he shared a lot of features

in common with the rapist, but that when she viewed Coats in a line-up several days later, she told the police that he was not the perpetrator.

Further, lead trial counsel testified, during the post conviction hearing, that he was certainly aware of the Coats matter, and co-counsel testified that she had checked the records of some of the persons who had been investigated regarding the rapes, including Mr. Redwine, but had found nothing suggesting he was the offender in the murder case. Co-counsel stated that she had also discussed other suspects with an officer and, when necessary, corroborated information with him. Moreover, counsel stated that there was no evidence which would have shown any "reasonable doubt," and that, if such evidence had existed, it would have been pursued.

Affording the defense attorneys the strong presumption that their conduct fell within the wide range of reasonably professional assistance, the TCCA found that Nichols had not shown otherwise. As to prejudice, the state court found, in view of the detailed confessions and other proof, that even if counsel had offered the arguments which petitioner alleged would have established reasonable doubt, there was no reasonable probability of a different outcome.

As noted, the claim was also offered to the Tennessee Supreme Court, which recounted that lead counsel had stated that the investigation of other suspects "did not seem fruitful." *Nichols*, 90 S.W.3d at 592. The highest state court likewise iterated that co-counsel had testified that Nichols had made vivid and greatly detailed admissions against himself and had described details that only the perpetrator and the victims would have known.

Here, according to the testimony of Nichols's counsel, they investigated other individuals, talked to the police about those individuals, but found no evidence that suggested that the offenses were committed by someone other than Nichols, so as to support a theory of reasonable doubt.  Counsel has no duty to continue with an investigation which will be unproductive.  *See Wiggins v. Smith*, 539 U.S. 510, 525 (2003) (recognizing that no further investigation need be done where counsel uncovers evidence suggesting that it would be fruitless); *Hamilton v. Ayers*, 583 F.3d 1100, 1129 (9th Cir. 2009) (observing that "the duty to investigate and prepare a defense is not limitless" and "does not necessarily require. . . that counsel must pursue every path until it bears fruit or until all conceivable hope withers") (internal quotation marks omitted); *Mandacina v. United States*, 2001 WL 876924, *2 (W.D. Mo. July 25, 2001) ("Given the demands placed upon trial counsel facing a murder trial, it cannot be expected that counsel will doggedly investigate every conceivable suggestion that maybe someone else was (also?) involved.").

Nor does an attorney's mere reliance on a police detective in assessing whether to proceed with an investigation of another suspect constitute a prejudicial performance.  *See Hodge v. Haeberlin*, 579 F.3d 627, 650-651 (6th Cir. 2009) (no deficient performance or prejudice where counsel failed to investigate a potential alternative suspect because a detective had pursued that lead "until it proved to be a dead end").  This is especially true, where the police " received and pursued hundreds of tips, questioned over 100 people, and investigated numerous possible suspects," *Nichols v. Heidle*, ___ F.3d. ___, ___, 2013 WL 3821537 (6th Cir. July 25, 2013), and where duplication of those efforts by defense counsel would have been virtually impossible, given the other demands on counsel's time

17

and resources in preparing petitioner's cases for trial or for guilty pleas. And it must be noted that, while Nichols claims that, but for counsel's asserted ineffectiveness, he would not have agreed to plead guilty, he has failed to describe any additional evidence which would have supported a reasonable doubt defense and which would have been discovered had counsel conducted a more thorough investigation into the other suspects.

Finally, petitioner's contention that the determination regarding his ineffective assistance claim must be measured against the fact that he was facing the death penalty in the capital case and "that there was no worse outcome than a conviction in that case," [Doc. 23, Petr.'s Reply at 19], is not the standard for evaluating such a claim. Arguing that there could be "no worse outcome" is substantially similar to arguing that petitioner had nothing to lose. *Strickland* does not support that an attorney renders ineffective assistance by abandoning a claim in a death penalty case because there was nothing to lose. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("This Court has never established anything akin to the Court of Appeals' 'nothing to lose' standard for evaluating *Strickland* claims.").

The Supreme Court has observed that "[a]n attorney can avoid activities that appear distractive from more important duties [and is] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 131 S.Ct. at 789. Given that the AEDPA "demands that state-court decisions be given the benefit of the doubt," *Renico v. Lett*, 599 U.S. 766, __, 130 S. Ct. 1855, 1862 (2010) (citations omitted), and in view of the onerous standard which must be met to prevail on an ineffective assistance claim under the AEDPA, *see*

18

*Harrington*, 131 S.Ct. at 788, the Court finds that relief is unwarranted here because the state appellate courts's rejection of petitioner's claim of ineffective assistance was not an unreasonable application of nor contrary to *Strickland* and because the state court did not unreasonably determine the facts placed before it.

*3. Failure to Investigate the Serology Issue*, [*Doc. 23, Petr.'s Reply at 2-3,12-14, 20-21*].

In the next claim of ineffective assistance, Nichols charges counsel with failing to investigate and provide necessary information to the State's forensic expert. According to petitioner, his attorneys had a report from the Tennessee Bureau of Investigation ("TBI"), dated May 9, 1989, signed by serologist Mike VanSant, which contained serology evidence from the victim. However, the attorneys did not follow-up on that report, did not talk to VanSant, and did not obtain his lab notes. Had counsel simply talked to this expert and told him that an oral rape had been committed also, the expert would have changed his report to reflect that Nichols is excluded as the depositor of one of the antigens found in the samples from T.R., [*Id.* at 14].

Petitioner further argues that, had counsel known of the weakness of the physical evidence, it is likely that they would have changed their recommendation to petitioner to plead guilty, [*Id*. at 19-20]. In addition, the likelihood that they would have advised a not guilty plea is all the more compelling given that the instant convictions were going to be used to support the prior felony aggravator in the capital case and that counsel would have to rebut and/or mitigate that aggravator.

When this claim was presented to the Tennessee Supreme Court during petitioner's post-conviction appeal, he specifically argued "that saliva and vagina swabs of the victim

revealed the presence of a type B antigen and that he and the victim were both type O

secretors who secreted only type H antigens."  In its discussion of the claim, the state

supreme court pointed to VanSant's testimony that

> as a T.B.I. serologist in 1989, he tested a saliva sample taken
> from T.R., which revealed a B antigen, and a vaginal sample,
> which revealed B and H antigens in three of four tests and only
> an H antigen in one of the four tests.  He indicated that he did
> not test the saliva sample for semen and that the results were
> therefore inconclusive.  Although VanSant agreed that it was
> a "definite possibility" that the rapist was a type B secretor, he
> testified that he also found a sample of spermatozoa on the
> victim's bedspread that contained only type H antigens.
> According to VanSant, the type H antigen could only have
> been produced by the victim, Nichols or any other type O
> secretor; moreover, although the type B antigen must have
> been produced by someone other than the petitioner, its
> presence did not exclude the petitioner or anyone else as the
> perpetrator of the offense.

*Nichols*, 90 S.W.3d at 588.  VanSant further stated, during his testimony, that, at the time

he performed the analysis, he had not known that the victim had engaged in voluntary

sexual intercourse three days before the offense.  This would have made a difference as

to the tests he performed, so he testified, because he would have tested two or three of

the seven areas of stain found on the bedspread to determine whether a different antigen

than the H antigen had been deposited on the spread.  The H antigen found during the

tests, according to VanSant could have belonged to the victim.  While VanSant stated that

he would not have expected to find antigens three days after sexual relations, he admitted

that, under pertinent literature, antigens could be found up to nine days later.

> After noting that the TCCA, based on its review of the evidence, had determined

that the proof was inconclusive, the higher state court found that petitioner had not

established any deficiencies in trial counsels' performance, given that VanSant had testified that the presence of type B antigen did not exclude Nichols as the offender and that Nichols had confessed to the offenses against T.R.

The record shows that, during the post-conviction evidentiary hearing, VanSant testified that the results of the testing were inconclusive and that additional tests, which he would have liked to perform, never would have excluded Nichols as the perpetrator of the rape because he was the same type secretor (H antigen) as T.R., [Addendum 3, vol. 10, Evid. Hr'g Tr., VanSant Test. at 1219, 1222, 1228-29]. Prompting VanSant's desire for additional testing was information he later learned concerning voluntary intercourse in which T.R. had engaged three days prior to the rape, which he was not given previously. [*Id*. at 1225-25].

Co-counsel also testified at the hearing on the subject of the guilty pleas. She stated that the chances of winning any of the non-capital cases were "slim to none" and that having Nichols enter guilty pleas to some charges in exchange for the dismissal or lowering of other charges achieved a better result than could have been achieved had he gone to trial. [Addendum 3, vol. 6, Evid. Hr'g Tr., Bryan Test. at 642-43]. Indeed, as a result of what can only be called a sound strategic decision, petitioner entered a guilty plea to one count of aggravated rape and the trial court, over the State's strenuous objection, dismissed a second count of aggravated rape involving oral penetration, due to a flaw in the indictment. [Addendum 3, vol. 29, Guilty Plea Hr'g Tr., September 13,1989].

Trial counsels' failure to investigate VanSant's serology report (which related that the testing performed on samples collected from the victim and at the crime scene

rendered inconclusive results), was not objectively unreasonable since inconclusive results did not exclude petitioner as the perpetrator and did not exculpate him as the rapist. Also, counsel's performance is not to be judged in hindsight, but instead by "pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgments." *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (internal quotation marks and citations omitted). Therefore, information learned after VanSant submitted his report which kindled his desire for more testing cannot be considered in the calculus of ineffective assistance. Furthermore, as the state court pointed out, petitioner admitted to the aggravated rape of T.R. to law enforcement officers and to his attorneys. And by pleading guilty to one count of aggravated rape against T.R., petitioner obtained the dismissal of the other aggravated rape charge against him.

In rejecting this claim of ineffective assistance, the state court did not unreasonably apply *Strickland* nor unreasonably determine the facts placed before it. The writ will not issue with respect to this claim.

*4. Precipitous Guilty Plea*, *[Doc. 2, Petr.'s Reply at 2-3, 12]*.

In this claim of attorney error, petitioner asserts that he had a pretrial competency and sanity evaluation, indicating that further investigation into mental health issues was warranted. That evaluation put counsel on notice that his client could have "intense, often un-controlled, destructive impulses" that "may be handled in a variety of ways," but that he did not have insight or awareness of this emotional state, [Doc. 23, Petr.'s Reply at 12]. In addition, Nichols exhibited "substantial indications of significant immaturity and some schizoid features," [*Id.*]. Instead of exploring these leads into their client's mental state

further, counsel pled Nichols guilty in September of 1989, before he was examined by the court-authorized defense psychologist.

When questioned concerning this matter during the post-conviction evidentiary hearing in the trial court, Co-counsel Bryan explained her reasoning for having Nichols plead guilty to the T.R. rape, before having him examined by a defense psychologist, [Addendum 3, vol. 6, Evid. Hr'g Tr., Bryan test. at 620-21]. She testified that she had met with one of the State's mental health experts who was evaluating Nichols and had discussed with the expert, at great length, the Rorschach test and every other test administered to Nichols, in order to understand the expert's forthcoming conclusions as to her client's mental state. The expert told her that Nichols was "not mentally ill" and that nothing showed that Nichols was mentally ill, though admittedly one test had revealed evidence of a "potential explosiveness or an inability to control himself." Nonetheless, the expert had opined that this "potential explosiveness" test result was "nothing" and, even though Ms. Bryan stated that she could not recall the "exact scientific analysis" used by the expert, that the result did not indicate what she hoped it would indicate. The trial court did not find ineffective assistance in this regard.

This alleged attorney error was raised in the post-conviction appeal in the TCCA, but the error was presented to show that counsel gave ineffective assistance by failing to challenge Nichols's confessions as unreliable, [Addendum 6, Doc. 1, Petr.'s Post-Conviction App. Br. at 81, 86-88]. Indeed, petitioner argued in his appellate brief that this shortcoming on the part of trial counsel, combined with other alleged shortcomings, "contribute to the failure to investigate the possibility of a false confession which would

23

have uncovered the vast quantity of exculpatory, reasonable doubt evidence presented at the post-conviction hearing," [*Id*. at 88]. Thus, the state courts addressed the issue as it was raised: within the context of the purported false-confession and reasonable doubt errors.

The Court's review of this alleged attorney shortcoming likewise has been conducted within the bounds of the first claimed attorney error (counsel's alleged failure to challenge the reliability of Nichols's confession). For the reasons set forth in the discussion of the false-confession claim, habeas corpus relief is not justified with respect to this claim either.

5. *Illegal Arrest Claim, [Doc. 23, Petr.'s Reply at 2-5].*

Petitioner argues, in his fifth claim of ineffective assistance, that counsel did not move to suppress his statements on the ground that the confessions were given after he was illegally arrested, based solely on an anonymous tip. According to Nichols, the anonymous caller identified Nichols to a police investigator, said he fit the description of the rapist published in the newspaper, and stated that Nichols worked at Godfather's Pizza. Petitioner asserts that since the record shows that no victim identified him before his arrest and since the uncorroborated, unsworn speculation of an anonymous caller does not provide probable cause, counsel provided ineffective assistance by failing to challenge the arrest as illegal.

Respondent maintains that this claim was raised in the state supreme court, quotes extensively from the state court's opinion, and asserts, without any developed argument or analysis, that the state court's subsequent adjudication of the claim is not an

24

unreasonable application of the governing legal standard. The Warden's answer has been remarkably unhelpful in assisting the Court in its review of this claim.

In addressing the issue, the state supreme court first observed that the post-conviction court had determined that trial counsel should have pursued the issue more fully and had also noted that some of the photo identifications, apparently, had been made after Nichols's arrest. Even so, the lower state court had found that this did not establish that none of the identifications had occurred prior to the arrest. The post-conviction court had also pointed out that the records referred to some pre-arrest identifications, that no victims were called during the post-conviction hearing to ask when they made the identifications of petitioner, and that Nichols had failed to show any prejudice, as he had not established the lack of any pre-arrest identifications.

Citing to proof contained in the record, such as trial testimony and a police report stating that the anonymous tip led to a computer check which, in turn, led to the discovery of Nichols's prior arrest for a sex offense and that a victim identified him from a mug shot, which supported the lower court's factual findings (i.e.,that petitioner had been identified before his arrest), the state supreme court concluded that, based on those factual findings, there was no showing of any deficiency on the part of counsel.

Nichols challenges the state courts' factual finding that there is evidence in the record showing that Nichols had been identified before his arrest. Recall that a state court's finding of fact must not be disturbed unless it is an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, § 2254(d)(2), or unless a petitioner provides clear and convincing proof to refute it.

The record contains an offense report, dated January 6, 1989, prepared by the East Ridge Police Department, which states that officers received an anonymous tip on January 5, 1989, which led to a computer check and, thence, to the discovery of Nichols' prior arrest for a sex offense, (Addendum 4, Ex. 49, vol. 1, East Ridge Police Department Offense Report Supplement). The police report indicates that, prior to Nichols's arrest, a victim identified him from a photograph as the perpetrator of the offense against her and that she was the "fourth victim in a row" to make such an identification.

Nichols argues that the record does not support that he was identified before his arrest, but supports, instead, that he was identified January 6th, the day after he was arrested, from Polaroid photographs taken on that same day by a police officer. Petitioner cites to the testimony of the officer and to the testimony of one of the victims as support for his assertions.

However, the cited testimony of the victim in another rape committed by Nichols shows that, when the victim was viewing the photo line-up consisting of what "looked like Polaroid pictures," a detective explained that, in making an identification, she should take into consideration that some of the photos she was viewing could be five years old, [Addendum 1, vol. 15, p. 150]. The rape of that particular victim occurred on January 3, 1989, [*Id*. at 120] and any photographs in the line-up which were five years old would have been taken in early 1984.

While Nichols may speculate that his identification was based on a Polaroid photograph taken on January 6th, nothing in the cited portion of the record contains actual proof that this is what happened. Indeed, the TCCA noted that petitioner had underscored

ambiguities which existed in the record but went on to find that he had failed to made the showing that he was required to make: the lack of any pre-arrest identifications. And again, as the state court noted, Nichols did not call any of the victims to testify during his post-conviction hearing as to the date they made their respective identifications.

Therefore, the Court concludes that the cited portions of the record do not undercut the state court's reasonable factual determination that Nichols failed to establish that no pre-arrest identifications had been made. Petitioner's argument to the contrary is rejected.

A petitioner who charges his attorneys with ineffective assistance of counsel based on their failure to pursue a Fourth Amendment claim must show first that the underlying Fourth Amendment claim had merit. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Here, based on the factual finding that Nichols did not establish that no pre-arrest identifications had occurred, counsel would have had no basis upon which to allege that there was no probable cause. Without a demonstration that this Fourth Amendment claim had merit, counsel did not give ineffective assistance by failing to move to suppress his client's statements based on an arrest lacking probable cause.

Because petitioner did not show that he received ineffective assistance of counsel in this regard, the state court did not unreasonable reject the instant claim.

*6. and 7. Prejudice Claims, [Doc. 23, Petr.'s Reply at 3, 19-21].*

Nichols maintains that, but for counsel's ineffectiveness, he would not have pled guilty and further maintains that his rape conviction in this case was used to support the aggravating factor in his death penalty case. These last two sub-claims are offered, not as examples of deficiencies of performance on the part of trial counsel, but respectively as

27

claims of prejudice and "extreme prejudice," [Doc. 23, Petr.'s Reply at 3]. An allegation of prejudice necessarily must be tied to an allegation of a deficient performance, which has not occurred with respect to these two sub-claims.

Furthermore, the fact that the rape conviction was used to support an aggravating factor in Nichols's later capital case would only be a valid claim of a prejudicial performance if it were consonant with *Strickland*'s instruction to consider the circumstances at the time of the alleged attorney error in evaluating an ineffective assistance claim. *See Strickland*, 466 U.S. at 689 ( cautioning courts " to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"). Certainly, a later-occurring capital trial is not a circumstances which existed at the time of counsel's claimed shortcoming in a non-capital case and could not be considered in assessing whether counsel's representation was constitutionally lacking.

Having found that the state court's adjudication of the previously alleged attorney errors, discussed earlier in this opinion, *see supra*, sections IV.A.1. - IV.A.5., was neither contrary to *Strickland*, not an unreasonable application of the precedent, and not based on an unreasonable factual determination, these claims of prejudice, which are not anchored to any claims of deficient performance, must likewise fail.

### 3. *Speedy Trial Claim, [Pet., Ground Three].*

In Nichols's last ground, he asserts that the inordinate delay in resentencing him, following his success on sentencing issues in the post-conviction court, violated his right to a speedy trial under the Sixth and Fourteenth Amendments and further resulted in a violation of his First Amendment rights under the Petition Clause by denying him federal

28

review. In support of this ground, Nichols further maintains that he formally asserted his right to a speedy re-sentencing proceeding just three months after counsel was appointed, [Doc. 23, Petr.'s Reply at 22-23]. Petitioner maintains that the length of delay was inordinate; was caused by either negligence or bureaucratic indifference on the part of the State; and denied him federal review of counsel's performance with respect to an aggravating factor in his capital case because his sentence had not been imposed in this case.

The Warden asserts, in his answer, that Nichols cannot be granted relief, as he has failed to show that the state court unreasonably applied the relevant Supreme Court precedent in rejecting this claim or that its decision was based on an unreasonable determination of the facts placed before that state court.

When Nichols presented his claim to the TCCA, the state appellate court, citing to *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), described the factors to be weighed to determine whether a defendant's speedy-trial right has been violated. *Nichols v. State*, 2009 WL 2633099, *5 (Tenn. Crim. App. Aug. 27, 2009). Those factors include: the length of the delay, the assertion of the right, the reasons for the delay, and any prejudice to the defendant in light of the facts and circumstances of the particular case. The TCCA noted that a delay which approaches one year is presumptively prejudicial and triggers an analysis of the remaining factors. The state appellate court identified the delay as being from October 7, 2002, when the state supreme court remanded the non-capital cases for resentencing, to April of 2006, when the State initiated resentencing proceedings (i.e., approximately three years and six months). The TCCA

then found the delay, implicitly, to be presumptively prejudicial, and went on to weigh the remaining factors.

The TCCA found that petitioner did not assert his right to a speedy trial in state court until May of 2007, and weighed this factor in favor of the State. The state court also considered Nichols's assertion that the State delayed the resentencing in order to gain a tactical advantage over his ability to collaterally attack his capital and noncapital convictions in federal court (reason for the delay). After examining the allegations, the supporting arguments, and the district court's opinion issued in Nichols's capital habeas corpus case, the TCCA found that petitioner might well have shown negligence or bureaucratic indifference, but that he had "failed to establish any tactical advantage gained by the State by delaying the resentencing hearings in the noncapital cases." *Id*., 2009 WL 2633099, at *8, *10. The state court also quoted excerpts from the federal district court's opinion, in which claims involving the noncapital cases were dismissed because the judgment being attacked in the federal habeas proceedings was the capital case and because issues involving the Nichols's noncapital cases were not cognizable claims. Nonetheless, given the "inordinate" length of the delay, the third factor was counted in petitioner's favor, though it was not afforded "the same amount of weight or consideration as an intentional or deliberate delay purposely caused for improper purposes." *Id*. at *10.

Next, the TCCA addressed Nichols's contentions concerning the prejudice factor, which it observed was the most important factor in the *Barker* analysis. The state court began by highlighting petitioner's acknowledgment that he was currently in custody serving an effective sentence of 225 years in unrelated cases and was also awaiting execution of

a death sentence. Based on these acknowledgments, the TCCA concluded that Nichols's level of anxiety as to the sentence he would receive in the noncapital cases would have been negligible.

The state court found that petitioner was resentenced to the minimum sentence for each count of the indictment in the noncapital cases, for an effective sentence of twenty-five years, with each sentence to be served concurrently. It then rejected any claim that the delay impeded Nichols's ability to defend himself during the resentencing hearing, as well as any claim that the delay caused him to be unduly imprisoned, given that the sentence he received at the resentencing hearing did not exceed the effective sentence imposed in the other noncapital cases.

The TCCA then turned to Nichols's allegation that he had been prejudiced by an incomplete federal review of the habeas corpus petition in his capital case. The state court again examined the district court's opinion issued in Nichols's capital habeas corpus case and found that the federal court's dismissal of claims involving his noncapital cases was not attributed to any delay in resentencing. The prejudice factor weighed against petitioner. Based on its weighing of the factors, the state appellate court concluded that Nichols's  right to a speedy trial had not been violated and that relief was unjustified.

As the TCCA observed, the appropriate analysis for determining whether a defendant's right to a speedy trial has been denied is enunciated in *Barker v. Wingo*, which requires the Court to apply a four-factor balancing test, which, in turn, weighs the conduct of both the prosecution and the defendant. *Barker*, 407 U.S. at 521. Because the state court relied on *Barker* as the legal principle which controls a speedy-trial claim, its decision

is not contrary to the well established rule in a Supreme Court case. *Vermont v. Brillon*, 129 S. Ct. 1283 (2009) (applying *Barker* to review of speedy trial claim); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005) (same in § 2254 case). Here, the TCCA treated the delay of well over three years as sufficiently prejudicial to invoke a weighing of the remaining *Barker* factors. The factor involving the reason for the delay weighed slightly in petitioner's favor, due to the inordinate length of the delay. Nichols's assertion of the right to a speedy trial occurred in May 2007; the resentencing occurred in December 2007; and the subsequent delay, according to the TCCA, "was the result of [petitioner's] request for continuances." *Nichols*, 2009 WL 2633099, at *7. This rights-assertion factor fell, so the TCCA determined, on the State's side. And as discussed, the prejudice factor fell solidly on the State's side.

Nichols offers several arguments as to why the state court decision does not bar habeas corpus relief. Citing to *Barker*, 407 U.S. at 527, 529-32, petitioner first argues that the writ should be granted because state court's decision on the second factor (defendant's assertion of the speedy trial right) is impermissible and contrary to federal law. It is contrary to federal law, petitioner explains, because it violates the basic principle of federal law which holds that a defendant has no duty to bring himself to trial; thus, requiring a defendant to actively seek re-sentencing or have his failure to do so weigh against him is at odds with this principle. Whether this is so or not, it is not a principle espoused in *Barke*r.

*Barker* applied a balancing test for determining whether a speedy trial right had been violated, *Brown v. Bobby*, 656 F.3d 325, 330 (6th Cir. 2011), weighing the conduct of the prosecution and the conduct of the defendant, *Barker*, 407 U.S. at 530, and rejecting

a rule "that a defendant who fails to demand a speedy trial forever waives his right" and also the rule that a "defendant has no responsibility to assert his right." *Id.* at 528. The Supreme Court did not place the burden of protecting the right to a speedy trial "solely" on a petitioner, but instead, adopted "the better rule" which states that the assertion of or failure to assert a speedy trial right is merely one factor to be considered in the inquiry into whether a deprivation of the right has occurred. *Id*. at 527-28.

Nichols has not contended that the state court decision was contrary to *Barker* when it weighed the "assertion-of- the- right" factor against petitioner. That is important because the word "contrary" as it is used in the text of 28 U.S.C. § 2254(d), "suggests that the state court's decision must be substantially different from the relevant [Supreme Court] precedent." *Brown v. Bobby*, 656 F.3d at 330 (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (all internal quotation marks omitted). Because the state court's decision on factor two (assertion of his speedy trial right) is not, and is not alleged to be, substantially different from *Barker*, petitioner's argument is unavailing.

Next, Nichols maintains that the decision is unreasonable, but does not explain whether he is claiming that the state court unreasonably applied *Barker* or unreasonably determined the facts presented. To further obfuscate the issue, petitioner also alleges that the state court's presumption that he acquiesced in the State's delay and weighed that factor against him is contrary to federal law. In support of his "contrary to" argument, petitioner suggests that he was a convicted person, facing a death sentence and 225 years imprisonment, and had no incentive to delay his re-sentencing. Obtaining federal review of his death sentence, including review on the claim involving the non-capital cases, were

of paramount concern to him. Accordingly, he argues that the state court unreasonably presumed that Nichols acquiesced in the State's delay and weighed that factor against him.

The state court listed "[d]elay caused, or acquiesced in, by the defense," as one category of delay in determining the reason for the delay (factor three). The discussion which followed involved two different categories of delay—intentional delay to gain a tactical advantage over the defense and bureaucratic indifference or negligence. Nichols claimed that the delay was intentional to gain a tactical advantage over his ability to seek federal habeas corpus relief in his capital and non-capital cases. The state court determined that petitioner had shown no tactical advantage gained by the state in delaying resentencing; that the most he had shown was bureaucratic indifference or negligence; but that, due to the inordinate delay, this factor weighed slightly in favor of petitioner. There is no discussion of delay caused by acquiescence nor, so far as the opinion discloses, no presumption regarding acquiescence. Petitioner's suggestion to the contrary is unavailing.

Relying on *Dickey v. Florida*, 398 U.S. 30 (1970), petitioner also argues that, though factor three was placed on Nichols' side of the scale, the state court unreasonably failed to assign great weight to this factor. *Dickey* was handed down before *Barker* and before the Supreme Court instructed that a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government[; whereas a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily." *Barker*, 407 U.S. at 531. Given that *Barker* approved of this aspect of the state court's weighing of the factors, this argument likewise is unavailing.

With respect to the prejudice factor, the state court found that Nichols had "failed to show that he was prejudiced by the delay in resentencing him in the noncapital cases." *Nichols*, 2009 WL 2633099, at *10. In petitioner's final argument to overcome the limitations on relief afforded to state court adjudications of claims on the merits, he asserts that, contrary to what the state court decided, he did sustain prejudice due to his delayed re-sentencing because it caused him "to lose the opportunity for judicial review of the aggravating factors in his capital case," [Doc. 23, Petr.'s Br. at 30]. As explained earlier, issues involving Nichols's capital case are not cognizable claims because this petition involves a non-capital case.

However, even if the issue were cognizable, the state court decision of "no prejudice" in its *Barker* inquiry would not be an unreasonable application of nor contrary to *Barker*. Nichols bases his "I was prejudiced" argument on the allegation that he did not obtain judicial review of the aggravating factors in his capital case. But this allegation is not true because Nichols, in fact, obtained judicial review of the aggravating factors. *See Nichols v. Heidel*, 2013 WL 3828137 (6th Cir. July 25, 2013).

Under 28 U.S.C. § 2254(d), '[w]hen assessing whether a state court's application of federal law is unreasonable, the range of reasonable judgment can depend in part on the nature of the relevant rule that the state court must apply." *Renico*, 130 S. Ct. at 1864 (citation and internal quotation marks omitted). The speedy-trial right "is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied." *Barker*, 407 U.S. at 521. Also "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We

35

can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id.* at 530.

In recognition of the "leeway [state] courts have in reaching outcomes in case-by-case determinations," when applying general legal rules, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), such as *Barker*'s speedy-trial analysis, this Court finds that the TCCA's rejection of Nichols's claim was neither an unreasonable application of *Barker* nor based on an unreasonable determination of the facts presented to the state courts. No writ will issue.

Nichols's second claim in this last ground is that his right to petition the courts under the First Amendment was violated by the inordinate delay in resentencing him. The specific violation alleged is that the delay denied him federal review of counsel's performance regarding the aggravating factor in his capital case. Clearly, petitioner is attempting to bootstrap a claim involving his first degree murder case to a claim in this aggravated rape case. Claims involving any errors of review in Nichols's death penalty case must be raised in the case where those alleged errors occurred. Suffice it to say, such a claim is not properly before the Court.

Furthermore, if this Court could entertain the claim, it would be compelled to notice that an examination of Nichols's filings in the TCCA and the Tennessee Supreme Court during his resentencing appeals has not revealed that he presented in those proceedings his theory that his First Amendment right to petition had been impinged, [Addendum 8, Docs. 1, 3]. Since Nichols cannot return with this claim to the state courts, given that the state post-conviction statute of limitations bars any further review, he likely has committed

a procedural default of this theory or issue. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (federal claim must be offered under same legal theory as supported it in state court). Petitioner has offered nothing by way of cause and prejudice and, absent such a showing, federal habeas review would be barred by his unexcused procedural default. *See, e.g., Friedman v. Smith*, 83 Fed.Appx. 718, 722, 2003 WL 22976586, *4 (6th Cir. Dec. 5, 2003) ("[A] federal habeas court possesses the authority, in its discretion, to decide a petitioner's claim on the basis of procedural default despite the failure of the state to properly preserve procedural default as a defense.") (quoting *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)); *Moore v. Diguglielmo*, 2009 WL 2633776, *10 (W.D.Pa. Aug. 25, 2009) (finding a procedural default *sua sponte*, despite respondent's failure to assert the defense and his reliance on the state court's adjudication of claim under § 2254(d)'s deferential standard of review).

## IV. <u>Certificate of Appealability</u>

Finally, the Court must decide whether to issue a certificate of appealability (COA). A petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner, whose claims have been rejected on a procedural basis, must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id*.; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude that the disposition of those claims was debatable or wrong. Because Nichols has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.


**ENTER**:

_____ /s/Harry S. Mattice, Jr. _____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE